UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JULIO ERNESTO VASQUEZ CORREAL,<br><br>Petitioner,<br><br>v.<br><br>FACILITY ADMINISTRATOR/WARDEN TACOMA ICE PROCESSING CENTER; UNITED STATES OF AMERICA,<br><br>Respondents. | CASE NO. 2:26-cv-03294<br><br>ORDER |

## I

## Introduction

This matter comes before the Court on Julio Ernesto Vasquez Correal's Petition for Writ of Habeas Corpus. Dkt. # 1.[1] The Court has reviewed the materials filed in support of and in opposition to the petition, the rest of the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS the petition IN PART.

//

[1] This is Petitioner's second habeas corpus action. *See* Dkt. # 1 at 11; *see also* No. 2:26-cv-01539-JLR, Dkt. # 1. On July 8, 2026, the Court denied his first petition without prejudice for failing to name the proper respondents. No. 2:26-cv-01539-JLR, Dkt. # 9.

## II

## BACKGROUND

Petitioner is a citizen of Colombia and entered the United States on March 21, 2024. Dkt. # 7-1 at 2. He was detained by immigration authorities the same day. Dkt. # 6 at 2.

The next day, Petitioner received a Notice to Appear (NTA) stating that he was "an alien present in the United States who has not been admitted or paroled" and charging him as removable under Section 212(a)(6)(A)(i) of the INA. Dkt. # 7-1 at 2. Immigration authorities then released Petitioner on an order of his own recognizance (OREC). Dkt. # 7-2. The OREC stated that Petitioner must not violate any local, state, or federal laws. Dkt. # 7-2.

On March 19, 2026, Petitioner was convicted for driving under the influence (DUI). Dkt. # 7-3 at 3-4. Petitioner was sentenced to 180 days in jail (with 175 days suspended), one year of probation, and ordered to pay a fine of $750. Dkt. # 7-3 at 4.

On April 21, 2026, about a month after Petitioner's DUI conviction, ICE detained Petitioner while he was exiting a residence. Dkt. # 7-3 at 3. That day, immigration authorities prepared a memo stating that ICE canceled Petitioner's OREC because of the reasons listed in his I-213 form. Dkt. # 7-5. The I-213 form noted Petitioner's DUI conviction. Dkt. # 7-3 at 3-4.

On May 29, 2026, an immigration judge (IJ) denied Petitioner's applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). Dkt. # 6 at 3; Dkt. # 1 at 54-57. The IJ ordered Petitioner removed to Colombia, and Petitioner appealed the IJ's decisions to the BIA. Dkt. # 6 at 3.

Petitioner is currently detained at the Northwest ICE Processing Center (NWIPC). Dkt. # 6 at 2. He has not yet received a bond hearing. Dkt. # 5 at 6.

## III

## DISCUSSION

Federal district courts may grant a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c). "The petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

### A. Detention Authority

Petitioner asks for clarity about which statutory authority governs his detention. Dkt. # 1 at 3. He alleges that his "available file does not contain a complete current custody record explaining the precise statutory authority, any later custody redetermination, or the full procedural basis for [his] continued detention." Dkt. # 1 at 3.

Respondents contend that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) as an applicant for admission who was initially encountered at the United States border.[2] Dkt. # 5 at 2, 5. But Respondents recognize that courts in this District "often identif[y] the governing detention by asking how the government treated the petitioner." Dkt. # 5 at 6. And Respondents agree that Petitioner was released on an OREC governed by 8 U.S.C. § 1226. Dkt. # 5 at 6.

In line with the other decisions in this District, the Court concludes that Petitioner, who was released on an OREC and lived in the United States for years before ICE re-detained him, falls outside of 8 U.S.C. § 1225(b)'s mandatory detention scheme and is detained under 8 U.S.C.

[2] Respondents note that Petitioner's DUI conviction does not trigger detention under 8 U.S.C. § 1226(c). Dkt. # 5 at 7.

§ 1226(a). *See Mata Perez v. Hernandez*, 2026 WL 1506346, at *4 (W.D. Wash. May 29, 2026); *Mendez-Prades v. Scott*, 2026 WL 2921987, at *3-4 (W.D. Wash. Sept. 29, 2026); *Del Valle Castillo v. Wamsley*, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025) ("Particularly relevant in each case is the government's treatment of the petitioner seeking habeas relief: where a petition has been 'treated by Respondents as subject to discretionary detention under section 1226, rather than mandatory detention under section 1225,' the former is more likely to apply." (quoting *Romero v. Hyde*, 795 F. Supp. 3d 271, 281 (D. Mass. 2025)).

B. Due Process Violation

Petitioner also contends that his re-detention without an individualized custody determination violates the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person "of life liberty, or property, without due process of law[.]" Dkt. # 1 at 16. The right to due process "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a governmental action violates due process:

> [G]enerally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if

> any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

The traditional test for evaluating due process claims established by *Mathews*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

1. Private Interest

The first *Mathews* factor considers "the private interest that will be affected by the official action." 424 U.S. at 335. Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

Respondents argue that Petitioner has a reduced liberty interest in freedom from detention because ICE revoked his OREC and re-detained him soon after a DUI conviction. Dkt. # 5 at 8. But after three years of living freely in the United States under an OREC, Petitioner has a liberty interest in being free from detention. Still, the record also shows that Petitioner's OREC required that he not commit any crimes, and Petitioner acknowledges that he was convicted of a DUI soon before his re-detention. Dkt. # 7-2; Dkt. # 1 at 22. Accordingly, as other courts in this District have acknowledged, "the first *Mathews* factor may not weigh 'as strongly' for Petitioner, 'as it would for an individual without any indication of materially changed circumstances as may be relevant to the assessment of dangerousness or flight risk.'" *Wang v. Warden of Nw. ICE*

*Processing Ctr.*, 2026 WL 2963559, at *2 (W.D. Wash. Oct. 1, 2026) (quoting *Reyes v. Hermosillo*, 2026 WL 507678, at *5 (W.D. Wash. Feb. 24, 2026)). However, though Petitioner may have a reduced liberty interest, the Government was still required to comply with due process when re-detaining him. *Villanueva Monero v. Blanche*, 2026 WL 2874624, at *4 (W.D. Wash. Sept. 24, 2026) ("even assuming Petitioner's liberty interest is diminished due to his criminal convictions in violation of his OREC . . . his re-detention must still comport with due process.").

Accordingly, the first *Mathews* factor weighs slightly in favor of Petitioner.

2. Risk of Erroneous Deprivation

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 424 U.S. at 335.

Respondents contend that if Petitioner is detained under 8 U.S.C. § 1226(a), the risk of erroneous deprivation of his liberty was low as ICE re-detained Petitioner soon after he was convicted of a DUI in violation of his OREC. Dkt. # 5 at 9.

It is undisputed that Petitioner was given no opportunity to contest the reasons for his re-detention. And "[c]ourts in this District have held that there is a high risk of erroneous deprivation where a noncitizen is detained without notice and either a pre-deprivation hearing or a prompt post-deprivation hearing." *Villanueva Monero*, 2026 WL 2874624, at *4; *see also Quitio v. Warden*, 2026 WL 2168608, at *3 (W.D. Wash. July 28, 2026) ("the fact that the Government believes it has a valid basis for revoking Petitioner's OREC does not 'obviate the need for the Government to provide [an] individualized hearing' to allow Petitioner to challenge

the reasons for her re-detention 'prior to re-detaining' her" (quoting *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025)).

Accordingly, the Court finds that while Petitioner's conviction may "diminish[] the risk of erroneous deprivation to an extent," his re-detention "without any opportunity to show that [he] is neither a danger to the community nor a flight risk nevertheless creates a risk of arbitrary detention." *Quitio*, 2026 WL 2168608, at *3.

The second *Mathews* factor favors Petitioner.

3. Government's Interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. There is a "heightened governmental interest in the immigration detention context." *Rodriguez Diaz*, 53 F.4th at 1206.

Respondents argue that the government has an interest in detaining Petitioner to secure his appearance at immigration proceedings and because his DUI conviction presents a public-safety concern. Dkt. # 5 at 9-10.

The Court acknowledges Respondents' interest in "enforcing immigration laws" and "protecting the public from individuals with criminal convictions who are deemed dangerous." *Villanueva Monero*, 2026 WL 2874624, at *5. But the Court also notes that "[t]hese interests are in fact served by the individualized determination by an immigration judge, based on a review of evidence presented by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing removal proceedings, under existing, well-established procedures." *Id.* (quoting *Geler v. Blanche*, 2026 WL 1251660, at *7 (W.D. Wash. May 7,

2026)). So providing Petitioner with an individualized hearing "would not interfere with Respondents' interest." *Id.* This *Mathews* factor also weighs in favor of Petitioner.

. . .

In sum, all three *Mathews* factors favor Petitioner. Respondents' detention of Petitioner without an individualized hearing violates the due process protections afforded to him by the Constitution. As a result, Petitioner has proven by a preponderance of the evidence that he "is in custody in violation of the Constitution or laws or treaties of the United States" and thus is entitled to habeas relief. 28 U.S.C. § 2241(c).

C. Remedy

Respondents concede that "[i]f the Court rejects detention pursuant to 8 U.S.C. § 1225(b)(2)(A), Petitioner is eligible for a custody redetermination under 8 U.S.C. § 1226(a)." Dkt. # 5 at 7 (citing *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1336 (2025)). Petitioner requests release or, in the alternative, a bond hearing. Dkt. # 1 at 4.

The Court acknowledges that there are situations in which petitioners convicted of a crime in violation of their ORECs are entitled to immediate release. *See, e.g.*, *Gomez-Lopez v. Hernandez*, 2026 WL 1660359, at *2 (W.D. Wash. June 9, 2026) (ordering release of a petitioner who was convicted of a DUI but not re-detained by ICE until a year after the conviction); *Awa v. Noem*, 2026 WL 943593, at *2 (W.D. Wash. Apr. 8, 2026) (ordering release of petitioner who pled guilty to a DUI, completed a diversion program resulting in dismissal of the charge, and was re-detained when he appeared for an ICE check-in). Here, the Petitioner does not dispute that he was convicted of a crime, and the Government promptly revoked his OREC—citing the criminal conviction—and re-detained him. Under these circumstances, a post-deprivation bond hearing is

the appropriate remedy. *See Quitio*, 2026 WL 2168608, at *4 (ordering a post-deprivation bond hearing where petitioner was convicted for misdemeanor assault); *see also Villanueva Monero*, 2026 WL 2874624, at *5.

## IV

## CONCLUSION

For these reasons, the Court GRANTS the habeas petition IN PART (Dkt. # 1) and ORDERS:

1. Respondents must provide Petitioner with a bond hearing within 14 calendar days of this order. This bond hearing shall comply with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011)—there must be a contemporaneous record of the hearing, and the Government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community;

2. If the bond hearing does not occur within 14 calendar days of this order, Respondents shall immediately release Petitioner under appropriate conditions of release.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 15th day of October, 2026.

John H. Chun

John H. Chun
United States District Judge